# IN THE COURT OF APPEALS OF IOWA

No. 17-2084
Filed May 15, 2019

GABRIELLE BULMER and THOMAS BULMER,
    Plaintiffs-Appellants,

vs.

UNITYPOINT HEALTH, a/k/a UNITYPOINT HEALTH-DES MOINES, a/k/a IOWA
HEALTH SYSTEM, a/k/a CENTRAL IOWA HEALTH SYSTEM, a/k/a CENTRAL
IOWA HOSPITAL CORPORATION, UPH IOWA LUTHERAN HOSPITAL; DES
MOINES ORTHOPAEDIC SURGEONS, P.C.; WESLEY SMIDT; and
UNIDENTIFIED JOHN DOES,
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, David Porter, Judge.

Plaintiffs in a medical malpractice action appeal the grant of summary
judgment for the defendant providers.  **AFFIRMED.**

Mark A. Critelli of Critelli Law Firm P.C., Urbandale, for appellants.

Jack Hilmes and Aaron J. Redinbaugh of Finley Law Firm, PC, Des Moines,
for appellees.

Considered by Potterfield, P.J., and Tabor and Bower, JJ

**TABOR, Judge.**

Gabrielle and Thomas Bulmer appeal the district court's grant of summary judgment on their medical malpractice action in favor of various medical professionals and health-care entities.[1] Specifically, they claim the court abused its discretion in denying their request for more time to designate expert witnesses. Because the Bulmers did not show good cause for an extension, we affirm.

## I. Facts and Prior Proceedings

Gabrielle underwent a left hip replacement on November 7, 2014. She alleges following the surgery, she suffered paralysis on her left side and "left foot drop" due to sciatic nerve damage. Aiming to recover damages resulting from those conditions, Gabrielle and her husband, Thomas, filed this malpractice suit on November 4, 2016—three days before the statute-of-limitations deadline.[2] The defendants filed an answer on February 27, 2017. Accordingly, the Bulmers had until August 26, 2017, to designate an expert witness. *See* Iowa Code § 668.11(1)(a) (2016) (setting 180-day deadline from answer for designating expert witnesses).

While preparing her case, Gabrielle started a nerve-stimulation procedure "to determine where the issue occurred with the surgery resulting in the paralysis of the left lower extremity." But Gabrielle was diagnosed with blood clots, which

---

[1] For ease of reference, we refer to the various medical professionals and health-care entities collectively as the defendants—they include: UnityPoint Health, a/k/a UnityPoint Health-Des Moines, a/k/a Iowa Health System, a/k/a Central Iowa Health System, a/k/a Central Iowa Hospital Corporation, UPH Iowa Lutheran Hospital; Des Moines Orthopaedic Surgeons, P.C., Dr. Wesley Smidt; and unidentified John Does. Although initially named as a defendant, The Iowa Clinic, P.C. was granted summary judgment in June 2017 and is not a party to this appeal.

[2] The petition sought damages for loss of consortium on behalf of Thomas.

prevented her from completing the procedure to identify "where the nick, tear, cut, or whatever of the sciatic nerve occurred." Due to Gabrielle's nickel allergy, the blood clots could not be removed using a stent and no plan was finalized to treat the clots so that Gabrielle could complete the nerve-stimulation process to determine causation.

In light of this uncertainty, on August 24, 2017, the Bulmers moved for an extension of time to disclose their expert witnesses. The defendants resisted the motion. At a September 20 hearing, the Bulmers claimed good cause existed for the extension because they were unable to "do the proper analysis to find out where this [injury] occurred" because of Gabrielle's blood clots and nickel allergy. Defense counsel argued the Bulmers could not show good cause because they had failed to even designate a standard-of-care expert, which could have been done without any further testing. The defense also noted the Bulmers did not disclose to the court the identity of any experts with whom they were working to finalize the opinion they sought on damage to her sciatic nerve.

The court concluded the Bulmers did not show good cause and summarily denied their motion to extend the disclosure deadline. After that ruling, the defendants sought summary judgment because the Bulmers had no expert testimony to establish a prima facie case of medical malpractice. In their resistance, the Bulmers noted their disagreement with the court's rejection of their motion to extend but acknowledged summary judgment was appropriate due to their lack of designated experts. The court granted the defense motion for summary judgment, and the Bulmers now appeal.

**II. Scope and Standards of Review**

We review rulings regarding pretrial deadlines for an abuse of discretion. *Hantsbarger v. Coffin*, 501 N.W.2d 501, 506 (Iowa 1993). "A trial court has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989). We review summary judgment rulings for legal error. *Seneca Waste Sols. Inc. v. Sheafer Mfg.*, 791 N.W.2d 407, 410–11 (Iowa 2010). We view the record in the light most favorable to the non-moving party. *Robinson v. Allied Prop. & Cas. Ins.*, 816 N.W.2d 398, 401 (Iowa 2012).

**III. Analysis**

The Bulmers object to the denial of their request for more time to disclose expert witnesses, which precipitated the grant of summary judgment. They argue the district court abused its discretion in not considering the complications from Gabrielle's blood clots and nickel allergy as good cause. Our legislature set the statutory deadline at issue. Specifically, it states:

> A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
> The plaintiff within one hundred eighty days of the defendant's answer unless the court for *good cause* not ex parte extends the time of disclosure.

Iowa Code § 668.11(1)(a) (emphasis added).

Our supreme court has applied the good-cause definition for setting aside a default judgment to section 668.11. *Nedved v. Welch*, 585 N.W.2d 238, 240 (Iowa 1998). Under this definition, good cause is a

> sound, effective, *truthful* reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show his [or her] failure to defend was not due to his [or her] negligence or want of ordinary care or attention, or to his [or her] carelessness or inattention. He [or she] must show affirmatively he [or she] did intend to [act] and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so.

*Id.* (quoting *Donovan*, 445 N.W.2d at 766).

The Bulmers contend Gabrielle's development of blood clots justifies postponing the expert-witness disclosure because "[n]o reputable, ethical physician would be willing to offer an expert opinion without a current, through workup of [Gabrielle] especially in light of the physiological impediments: the development of blood clots in her left extremity presented (added to the then confirmed nickel allergy)."[3] The defendants contend the Bulmers failed to preserve error on this argument because it was never presented to or ruled upon by the district court. *See Meier*, 641 N.W.2d at 537. To the extent the Bulmers assert Gabrielle's blood clots prevented an expert from forming an opinion regarding

---

[3] In their reply brief, the Bulmers also note they pleaded res ispa loquiter in their petition "which, by itself, presents good cause" for extending the expert witness deadline. The defendants moved to strike this portion of the reply brief, and our supreme court ordered the defendants' motion to strike be considered with this appeal. The Bulmers' opening brief fails to mention res ispa loquiter as a basis for granting the motion to extend. "[A]n issue cannot be asserted for the first time in a reply brief," so we do not consider this claim on appeal. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992). Even if Bulmers had presented this argument in their opening brief, we could not consider it on appeal because it was not raised in and decided by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

causation due to the inability to complete the nerve-stimulation procedure, we find error preserved. But to the extent the Bulmers assert on appeal they could not secure any expert, including a standard-of-care expert, absent a full examination of Gabrielle, we find error not preserved because they did not present that argument to the district court.

On the preserved claim, we find no error in the court's denial of the motion to extend the deadline. When determining if good cause warrants an extension of time under section 668.11, we consider: (1) the seriousness of the deviation from the timeline; (2) the prejudice to the defendant from the delay; and (3) defense counsel's actions, if any, in encouraging plaintiff's compliance. *Hill v. McCartney*, 590 N.W.2d 52, 55 (Iowa 1998) (citing *Hantsbarger*, 501 N.W.2d at 505–06). Here, we cannot say the deviation is minor. Two days before the 180-day deadline, the Bulmers asked for "a minimum extension" of six months to disclose a medical expert. They did not estimate when Gabrielle's blood clots would be resolved allowing an expert to complete the nerve stimulation procedure. This open-ended request for more time leaves the defendants in a legal limbo not contemplated by the good-cause exception in section 668.11.

In addition, the resistance to the extension request shows the Bulmers misled the defendants by previously suggesting an expert was already assessing the case. Plus, defense counsel tried to contact the Bulmers' counsel several times to discuss the lack of progress in the case. Critically, the Bulmers failed to support their assertion Gabrielle's blood clots prevented an expert from forming an opinion regarding causation or the standard of care. *See Nedved*, 585 N.W.2d at 240 (noting district court was not required to accept explanation for delay in

disclosure when it was unsupported by any evidence). The Bulmers also failed to provide the names of any potential experts who could testify once Gabrielle's blood clots are eventually treated. *See id.* (noting the plaintiffs failed to even identify potential experts). As a result, the district court did not abuse its discretion in denying the motion. *See Donovan*, 445 N.W.2d at 766.

Without expert witnesses to establish a standard of care and violation of that standard, the Bulmers are unable to demonstrate a prima facie case of medical malpractice. *See Hill*, 590 N.W.2d at 56. Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED**